UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

TANYA LEE ELLISON,                          )
                                            )
            Plaintiff,                      )
                                            )
v.                                          )            No. 2:21-CV-13-DCP
                                            )
KILOLO KIJAKAZI,[1]                         )
Acting Commissioner of Social Security,     )
                                            )
            Defendant.                      )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 20].  Now before the Court are

Plaintiff's Motion for Judgment on the Pleadings [Doc. 22] and Defendant's Motion for Summary

Judgment [Doc. 24].  Tanya Lee Ellison ("Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I.      PROCEDURAL HISTORY

On June 13, 2018, Plaintiff filed an application for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that

began on October 15, 2011 [Tr. 15, 74, 186–91].  At the disability hearing, Plaintiff amended her

alleged onset date to April 1, 2017 [Tr. 15, 43, 188].  After her application was denied initially and

---

[1]      Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

upon reconsideration, Plaintiff requested a hearing before an ALJ [Tr. 94–97, 102–116, 117–18]. A hearing was held on May 1, 2020 [Tr. 38–59]. On June 3, 2020, the ALJ found that Plaintiff was not disabled [Tr. 12–32]. The Appeals Council denied Plaintiff's request for review on December 23, 2020 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on January 21, 2021, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2020.

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of April 1, 2017, through her date last insured of March 31, 2020 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments:    fibromyalgia, connective tissue disorder, osteoarthritis, asthma, obesity, hearing loss, depression, anxiety, and posttraumatic stress disorder ("PTSD") (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could no more than occasionally climb, balance, stoop, kneel, crouch, or crawl. She was limited to no concentrated exposure to louse noise, vibration, pulmonary irritants,

2

or hazards. She could perform no work requiring excellent hearing. The claimant could maintain concentration for simple and detailed tasks, and have no more than occasional interaction with supervisors or coworkers.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 1, 1977 and was 43 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 1, 2017, the amended alleged onset date, through March 31, 2020, the date last insured (20 CFR 404.1520(g)).

[Tr. 17–31].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

3

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed

4

waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that

5

accommodates his residual functional capacity ("RFC") and
vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

"based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R.

§§ 404.1520(a)(4), -(e). RFC is the most a claimant can do despite her limitations.

§ 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529.

The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform. *Her*

*v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V.    ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff contends that the prior proceedings

conducted through the SSA and the Appeals Council are invalid because the Commissioner of

Social Security was not constitutionally appointed pursuant to *Seila Law L.L.C. v. Consumer*

*Financial Protection Bureau*, 140 S. Ct. 2183 (2020).[2] Plaintiff claims she is entitled to a new

hearing before constitutionally appointed officers. Secondly, and in the alternative, Plaintiff

argues that the Commissioner's final decision lacks the support of substantial evidence because

the Commissioner's findings fail to adhere to the SSA's rules and regulations regarding disability.

Specifically, Plaintiff asserts that, in calculating her RFC, the ALJ failed to properly account for

---

[2]    The Court recently addressed a similar argument in *Boggs v. Kijakazi*, No. 2:21-CV-17-
DCP, 2022 WL 4360940 (E.D. Tenn. Sept. 20, 2022).

her history of mental illness—alone and in conjunction with her fibromyalgia, did not give due weight to the Department of Veterans' Affairs ("VA") finding that she was disabled, and improperly considered her subjective complaints. Plaintiff therefore requests that, in the event the Court finds the ALJ had authority to make a determination, the Court remand her case for full and fair consideration of her physical and mental impairments in combination.

The Commissioner argues that Plaintiff's separation-of-powers argument does not entitle her to a rehearing of her disability claim. Furthermore, the Commissioner maintains that substantial evidence supports the ALJ's decision. The Commissioner thus requests the Court affirm her final decision.

### A.    Plaintiff's Request for Remand Based on Separation of Powers

Plaintiff first argues that the ALJ's decision denying her social security benefits is constitutionally invalid under separation of power principles. She argues 42 U.S.C. § 902(a)(3), which provides that "an individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office," is unconstitutional under *Seila Law* [Doc. 23 p. 12]; that this unconstitutional removal provision renders the Commissioner's appointment—and all actions taken by the Commissioner during his appointment—unconstitutional [*Id.* at 12–13]; and since the Commissioner's subordinates—including the ALJ and Appeals Council—served under authority delegated from the Commissioner, their appointments are also invalid and any decisions they rendered—including the ALJ's decision denying Plaintiff social security benefits—are invalid [*Id.*].[3]

---

[3]    Plaintiff acknowledges that she did not raise this constitutional challenge at the lower administrative levels but notes that she was not required to do so before consideration by this Court [Doc. 23 p. 13 (citing *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537 (6th Cir. 2020) (holding that the Appointments Clause challenge did not have to be raised before the SSA and could be raised

The Commissioner agrees with Plaintiff that 42 U.S.C. § 902(a)(3) violates separation of powers principles to the extent it limits the President's authority to remove the Commissioner without cause [Doc. 27 pp. 13–14 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op."))]. The Commissioner disagrees, however, that the unconstitutional removal restriction invalidates the ALJ's decision denying Plaintiff's benefits. The Commissioner first argues there is no nexus between the improper removal restriction and Plaintiff's alleged harm because the ALJ who decided Plaintiff's case was validly appointed by an Acting Commissioner not subject to the unconstitutional removal restriction [*Id.* at 16–18]. The Commissioner then argues that, even setting aside the circumstances of the ALJ's appointment, Plaintiff cannot show the unconstitutional removal restriction inflicted compensable harm on her—as required by *Collins v. Yellen*, 141 S. Ct. 1761, 1787–89 (2021)—because the restriction does not strip the Commissioner of his remaining authority [*Id.* at 18–21].[4]

### 1.       The ALJ's Appointment was Ratified by an Acting Commissioner

As part of her argument, Plaintiff asserts the unconstitutional removal restriction rendered the ALJ's appointment invalid [Doc. 23 pp. 12–13]. The Commissioner argues that the ALJ's

---

in the District Court); *Carr v. Saul*, 141 S. Ct. 1352, 1358–60 (2021) (finding that the Appointments Clause challenges do not have to be raised in the administrative proceedings but can be raised for the first time in the district court))].

[4]       The Commissioner also asserts the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and broad prudential considerations [Doc. 27 pp. 22–25]. Because the Court finds Plaintiff has not suffered compensable harm, it declines to address these alternative arguments. *See Butcher v. Comm'r of Soc. Sec.,* No. 2:20-cv-6081, 2021 WL 6033683, at *8 (S.D. Ohio Dec. 21, 2021), *report and recommendation adopted*, No. 2:20-cv-6081, 2022 WL 523519 (S.D. Ohio Feb. 22, 2022); (declining to reach similar arguments made by the Commissioner in light of holding on separation-of-powers claim).

8

appointment is valid regardless of the unconstitutional removal restriction because the ALJ was appointed by an Acting Commissioner who was not subject to the removal restriction [Doc. 27 pp. 16–18]. In support of this argument, the Commissioner relies on *Collins v. Yellen*, 141 S. Ct. 1761 (2021) [*Id.*]. In *Collins*, the Supreme Court distinguished between actions taken by an Acting Director and those taken by a confirmed Director. *Collins*, 141 S. Ct. at 1782–83, 1787. The Court found that any actions taken by an Acting Director could not result in compensable harm to a plaintiff because the removal restriction did not apply them. *Id.* Rather, the restriction only applied to confirmed Directors. *Id.* Thus, only actions taken by a confirmed Director could—at least potentially—cause a plaintiff compensable harm. *Id.* The Commissioner notes the ALJ in this case was appointed in July 2018 by then-Acting Commissioner Berryhill [Doc. 27 p. 16]. The Commissioner argues the ALJ was therefore properly appointed according to *Collins* [*Id.* at 16–18].

The Court finds the ALJ's appointment is constitutionally valid. The Court observes that Nancy A. Berryhill became the Acting Commissioner on January 23, 2017, *Geissler v. Berryhill*, No. 2:16-cv-06590, 2017 WL 3599193, at *1 n.1 (S.D.W.V. Aug. 21, 2017), and served until Andrew Saul was confirmed on June 17, 2019 [*Lisa D. v. Kijakazi*, No. 8:21CV294, 2020 WL 952778, at *6 (D. Neb. March 30, 2022)]. Saul then served as Commissioner until July 9, 2021, when President Biden appointed Kilolo Kijakazi as Acting Commissioner. *Id.* As the Commissioner notes, the ALJ was appointed in July 2018 during Acting Commissioner Berryhill's tenure. Since Acting Commissioner Berryhill was not subject to the unconstitutional removal restriction, the removal restriction could not have impacted the constitutionality of the ALJ's appointment and the appointment is therefore valid.

9

The remaining question is what impact the Court's finding regarding the validity of the ALJ's appointment has on the ultimate issue of whether the ALJ's decision was valid in this case. The Commissioner argues that the fact that the ALJ was properly appointed resolves the dispute and defeats Plaintiff's argument for setting aside the agency action [Doc. 27 p. 17–18]. The Court, however, does not find that the fact that the ALJ was properly appointed resolves the dispute. As discussed above, *Collins* distinguishes between actions taken by an Acting Commissioner and those taken by a confirmed Commissioner. In this case, the ALJ rendered his decision on June 3, 2020 [*Id.* at 16]. At that time, Andrew Saul was the confirmed Commissioner and he was subject to the improper removal restriction. The fact that the ALJ's decision was rendered during Saul's tenure leads this Court to believe there is at least a conceivable nexus between the ALJ's decision and the improper removal restriction, even if the ALJ was properly appointed. The Court therefore turns to the Commissioner's remaining argument.

### 2. Plaintiff Fails to Show that the Commissioner's Statutory Tenure Protection Affected the Determination of her Claim

The Commissioner's second argument as to why the ALJ's decision was valid is that the unconstitutional removal restriction did not strip the Commissioner of his remaining authority and, as such, could not have inflicted any compensable harm on Plaintiff as required by *Collins* [*Id.* at 18–21]. In *Collins*, the Supreme Court was first tasked with deciding whether 12 U.S.C. § 4512(a), (b)(2), which provided that the Director of the Federal Housing Finance Agency ("the FHFA")—an independent agency with a single Director—could only be removed "for cause," was unconstitutional in light of *Seila Law*. *See Collins*, 141 S. Ct. at 1770. The Court found *Seila Law* was "all but dispositive" and rendered the for-cause restriction unconstitutional under separation of powers. *Id.* at 1783–87.

10

The Supreme Court then turned to the petitioners' argument that the unconstitutional restriction rendered an amendment adopted by the prior Acting Director of the FHFA and implemented by the confirmed Directors void. *See id.* at 1787–88. The Court first made the distinction discussed previously between actions taking by an Acting Director and confirmed Director, finding only those actions taken by a confirmed Director could create a plausible claim. *Id.* at 1782–83, 1787. The Court then went on to find that even for a confirmed Director, the unconstitutional removal restriction did not strip the Director of their remaining authority provided they "were properly *appointed*" because the improper removal restriction only "limited the President's authority to *remove* the confirmed Directors." *Id.* at 1787. Where the confirmed Director was properly appointed, there was "no reason to regard any of the actions taken by the FHFA in relation to the [] amendment as void." *Id.*

The Court cautioned, however, that it was "still possible for [the] unconstitutional provision to inflict compensable harm" even when the Director was properly appointed. *Id.* at 1789. The Court ultimately remanded the compensable-harm issue to the lower courts. *See id.* Before doing so, however, it noted scenarios in which it was possible that the unconstitutional for-cause provision could have resulted in compensable harm to a petitioner. *See id.* One example was if "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal." *Id.* A second was if "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* In these instances, "the statutory provision would clearly cause harm." *Id.*

In this case, Plaintiff relies only on the unconstitutional removal restriction. She does not cite any evidence President Biden unsuccessfully attempted to remove Commissioner Saul or had

11

otherwise made a public statement expressing his desire to do so. The Court therefore finds Commissioner Saul retained the authority to exercise those powers inured to him by statute upon his appointment—including the power to decide social security benefits claims or delegate those decisions to subordinate officers—meaning Plaintiff suffered no compensable harm.

The Court's finding that Plaintiff suffered no compensable harm is further supported by the rationale espoused by Justice Kagan in her concurrence in *Collins*. In her concurrence, Justice Kagan first reiterated the test set forth by the majority, namely, that "[P]laintiffs alleging a removal violation are entitled to injunctive relief—a rewinding of agency action—only when the President's inability to fire an agency head affected the complained-of decision." *Collins*, 141 S. Ct. at 1801 (Kagan, J. concurring). Justice Kagan then added, "Granting relief in any other case would, contrary to usual remedial principles, put the plaintiffs 'in a better position' than if no constitutional violation had occurred." *Id.* (citations omitted). The Commissioner cites Justice Kagan's rationale and argues that providing Plaintiff her requested relief would "provide her an unwarranted remedial windfall" [Doc. 27 p. 21]. Specifically, "she should be awarded a rehearing for no reason other than Section 902(a)(3)'s existence, whether or not she can show that its restriction . . . had any effect on her benefits claim" [*Id.*]. The Commissioner adds that, "[w]ere it otherwise," not only Plaintiff, but "thousands of other disappointed claimants" would also receive the windfall [*Id.*]. The Court agrees that granting Plaintiff her requested relief in this case because of the unconstitutional removal restriction would put her—and thousands of other claimants—in a better position than if no constitutional violation had occurred at all. The Court therefore finds Plaintiff's request for remand based upon separation of powers is without merit.[5]

_____

[5] The Court's decision falls in line with the numerous district courts, both in and out of this circuit, that have addressed similar claims raised by disability plaintiffs and that have reached a

## B.     The ALJ's Formulation of Plaintiff's RFC

Plaintiff next argues that even if the unconstitutional removal restriction does not invalidate the ALJ's decision, her case should still be remanded for a new hearing because the ALJ's finding that she is not disabled is not supported by substantial evidence. Specifically, Plaintiff argues the ALJ's determination that she can perform other work which exists in the national economy is not supported by substantial evidence because the ALJ failed to give proper consideration to: (1) her long history of mental illness [*Id.* at 15]; (2) her psychological and physical difficulties in combination [*Id.* at 16]; (3) the VA's finding that her service connection was raised from 20% to

---

similar conclusion in rejecting requests for remand. *See, e.g., Jeffrey G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-938, 2022 WL 1314433 (S.D. Ohio May 3, 2022); *Walker v. Comm'r of Soc. Sec.*, No. 4:20-CV-02506, 2022 WL 1266135 (N.D. Ohio Apr. 28, 2022); *Butcher v. Comm'r of Soc. Sec.*, No. 2:20-cv-6081, 2021 WL 6033683 (S.D. Ohio Dec. 21, 2021), *report and recommendation adopted*, No. 2:20-cv-6081, 2022 WL 523519 (S.D. Ohio Feb. 22, 2022); *Crawford v. Comm'r of Soc. Sec.*, No. 2:21-cv-726, 2021 WL 5917130 (S.D. Ohio Dec. 14, 2021), *report and recommendation adopted*, No. 2:21-cv-726, 2022 WL 219864 (S.D. Ohio Jan. 25, 2022); *Miley v. Comm'r of Soc. Sec.*, No. 1:20-CV-2550, 2021 WL 6064754 (N.D. Ohio Dec. 22, 2021); *Wybo v. Kijakazi*, No. 20-518, 2021 WL 6052423 (E.D. Ky. Dec. 21, 2021); *see also, e.g., Jean P. v. Kijakazi*, No 8:21-CV-200, 2022 WL 1505797 (D. Neb. May 12, 2022); *Numan v. Saul*, No. 20-CV-1978, 2022 WL 891111 (S.D. Cal. Mar. 24, 2022); *Lisa Y. v. Comm'r of Soc. Sec.*, No C21-5207, 2021 WL 5177363 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358, 2021 WL 4998397 (W.D. N.C. Oct. 27, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630, 2021 WL 5634177 (S.D. Cal. Dec. 1, 2021), *report and recommendation adopted*, No. 3:20cv1630, 2022 WL 970741 (S.D. Cal. Mar. 31, 2022).

Some of these courts have denied plaintiffs' claims for additional reasons, including for reasons under the doctrine of severability. *Jeffrey G.*, 2022 WL 1314433, at *5 (citing *Butcher*, 2021 WL 6033683, at *7). Those district courts have found that if § 902(a)(3)'s removal provision is stricken, the SSA would remain fully functional. *Id.; see also Butcher*, 2021 WL 6033683 at *7 (citing *Alice A. v. Comm'r of Soc. Sec.*, No. C20-5756, 2021 WL 5514434, at *6 (W.D. Wash. Nov. 24, 2021)) and finding that plaintiff's separation of powers claim failed, in part, because even if § 902(a)(3) was unconstitutional, it was severable from the remainder of the statutes governing the SSA); *Shaun A. v. Comm'r of Soc. Sec.*, No. C21-5003, 2021 WL 5446878, at *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v. Comm'r of Soc. Sec.*, No. C20-6176, 2021 WL 5356719, at *8 (W.D. Wash. Nov. 16, 2021) (same). Given the parties' arguments in this case and the Court's findings, the Court need not address the severability argument here.

90% [*Id.* at 18]; and (4) her subjective symptoms [*Id.*].[6]

In response, the Commissioner asserts that although Plaintiff frames her argument as challenging the ALJ's findings regarding the existence of other jobs in the national economy that Plaintiff can perform—a finding that takes place at step 5 of the disability analysis—Plaintiff is actually challenging the ALJ's finding regarding her RFC—a finding that takes place between steps 3 and 4 of the analysis [Doc. 27 p. 25]. The Commissioner argues the ALJ did not err in calculating Plaintiff's RFC and that such determination was supported by substantial evidence because the ALJ discussed the relevant evidence as part of his determination and ultimately assessed Plaintiff a restrictive RFC that accounted for all of her limitations [*Id.*]. The Commissioner argues that the ALJ's decision should therefore be affirmed [*Id.* at 31].

The Court agrees that Plaintiff is essentially challenging the ALJ's determination as to her RFC. 20 C.F.R. § 404.1545(a)(1) recognizes that a claimant's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." A claimant's "residual functional capacity is the most [they] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for determining a claimant's RFC. *See id.* at § 404.1545(c). In assessing an individual's RFC, the ALJ must determine the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." *Id.* at § 404.1545(a)(4). For physical abilities, the ALJ assesses "the nature and extent of physical limitations and then determine[s] [the claimant's] residual functional

---

[6]     Plaintiff also notes that an ALJ may rely on the testimony of a vocational expert in response to a "hypothetical question," but only if that hypothetical question accurately portrays the plaintiff's individual impairments [Doc. 23 p. 15 (citing *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777 (6th Cir. 1987))]. Plaintiff fails to argue, however, how the hypothetical question posed by the ALJ did not accurately portray her impairments.

14

capacity for work activity on a regular and continuing basis." *Id.* at § 404.1545(b). For mental abilities, the ALJ assesses "the nature and extent of [the claimant's] mental limitations and restrictions and then determine[s] [their] residual functional capacity for work activity on a regular and continuing basis." *Id.* at § 404.1545(c). Finally, when a claimant has a severe impairment, the ALJ is to consider the limiting effects of all claimant's impairments, even those that are not severe. *See id.* at § 404.1545(e).

In determining a claimant's RFC, an ALJ must consider all the relevant evidence in a claimant's record. *See id.* at § 404.1545(a)(1), -(e). It is the claimant's responsibility to provide such evidence to the ALJ. *Id.* at §§ 404.1545(a)(3), 404.1512. The categories of relevant evidence a claimant may provide to the ALJ include "objective medical evidence," "medical opinion," "other medical evidence," "evidence from nonmedical sources," including statements made by the claimant, and "prior administrative medical findings." *Id.* at § 404.1513(a)(1)–(5). The ALJ, in turn, must follow certain rules and regulations in considering the different types of evidence, including when considering medical opinion and prior administrative medical findings [*see id.* at § 404.1520c] or a plaintiff's symptoms [*see id.* at § 404.1529].

Once the ALJ has made a determination as to a claimant's RFC, that determination is given considerable deference on appeal. Specifically, the reviewing court "is limited to determining whether substantial evidence supported the ALJ's residual functional capacity determination." *Blakley*, 581 F.3d at 405. Substantial evidence is evidence that a "reasonable mind" would accept as adequate to support the ALJ's conclusion. *Id.* at 406. If the ALJ performs a "laborious evaluation of the medical record" and "carefully documented" such evidence in making its decision, the reviewing court must "defer to that decision even in the face of substantial evidence supporting the opposite conclusion." *Mokbel-Aljahmi v. Comm'r of Social Sec.*, 727 F. App'x

15

395, 401, 402 (6th Cir. 2018).

In this case, the ALJ determined that "through the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except she could no more than occasionally climb, balance, stoop, kneel, crouch, or crawl" [Tr. 20]. The ALJ further found "[Plaintiff] was limited to no concentrated exposure to [loud] noise, vibration, pulmonary irritants, or hazards" and "[s]he could perform no work requiring excellent hearing" [*Id.*]. Finally, the ALJ found Plaintiff "could maintain concentration for simple and detailed tasks, and have no more than occasional interaction with supervisors or coworkers" [*Id.*]. The Court finds that the ALJ properly considered all of the relevant evidence in calculating Plaintiff's RFC, including her history of mental illness both on its own and in combination with her physical restraints, the VA's determination, and her subjective symptoms; that he carefully documented the evidence he relied on; and that such evidence is that which a reasonable mind would accept as adequate to support the ALJ's conclusion. The Court therefore finds the ALJ's determination is supported by substantial evidence.

### 1.      Plaintiff's History of Mental Illness

Plaintiff's first sub-argument is that the ALJ erred by not accounting for the severe nature of her mental impairments [Doc. 26 p. 14]. Plaintiff points to evidence indicating she has a long history of mental illness, including two prior suicide attempts [*Id.* at 15 (citing Tr. 1195)], multiple hospitalizations for mental illness [*Id.* (citing Tr. 1195, 1479, 2030)], psychotic symptoms [*Id.* (citing Tr. 2094)], a major depressive disorder that has consistently been described as severe [*Id.* (citing Tr. 613, 698, 752)], and a chronic PTSD diagnosis [*Id.* (citing Tr. 289)]. She notes that the Commissioner's own regulations recognize that "longitudinal medical evidence" can show an individual's functioning over time [*Id.* (citing 20 C.F.R. § 404, Subpart P, App'x 1, § 12.00(c)(5))],

16

and argues that the ALJ's finding that she could maintain concentration for simple and detailed tasks with no more than occasional contact with co-workers and supervisors did not properly account for her long-term mental impairments [*Id.* at 15–16].

In response, the Commissioner asserts that Plaintiff is simply highlighting evidence that supports her alternative conclusion but that such an argument is irrelevant because the existence of an alternative way to construe the evidence does not mean the ALJ's determination was incorrect or otherwise not supported by substantial evidence [Doc. 27 p. 30]. The Commissioner also notes that much of the evidence Plaintiff relies on is not indicative of her mental functioning during the relevant time period because Plaintiff's hospitalizations occurred in October 2013 and December 2015, "well before her April 2017 onset date," and her suicide attempts are dated January 2009 [*Id.* at 30–31].

In his opinion, the ALJ noted the findings from several psychiatric consultations and therapy sessions spanning from March 14, 2017—less than one month before her amended alleged onset of disability—to March 5, 2020 [Tr. 22–26]. The ALJ also noted several exhibits offered by Plaintiff, including some regarding her mental health status that pre-dated the claimant's alleged onset date and therefore "offered little insight into the claimant's functioning during the relevant period" [*Id.* at 26]. Later on in the opinion, the ALJ went on to state:

> Regarding the claimant's mental conditions, while she reported difficulty with tasks involving memory, following instructions, concentrating and persisting, her mental status exams were mostly benign (e.g., Exhibits 1F/40, 51; 2F/46, 87, 113; 3F/52, 93, 111-112; 5F/135; 8F/54-55; 20F/25; 23F/17; 24F/10-11). She remained cooperative and friendly with her providers and there were no documented deficits in her concentration or memory. The claimant reported low motivation and anhedonia during her psychiatric and mental health visits, but as noted above, she has maintained some hobbies and activities, such as taking care or her dogs and making ornaments. Additionally, consistent with the generally unremarkable mental status exams, by March 2020, the claimant reported that she was doing "good" with improvement in her anxiety (Exhibit 24F/7-11). Accordingly, the

17

undersigned finds that the claimant could maintain concentration for simple and detailed tasks, and have no more than occasional interaction with supervisors or coworkers. These limitations accommodated her periods of hypervigilance, panic, low motivation, as well as her pain symptoms.

[Tr. 28].

The Court finds the ALJ's determination that Plaintiff could maintain concentration for simple and detailed tasks and have occasional interaction with supervisors or coworkers despite her mental health conditions is supported by substantial evidence. The ALJ cited several mental status examinations as part of his findings, including (1) a March 4, 2017 appointment in which "[t]here were no psychotic symptoms[,] [Plaintiff] had no command auditory hallucinations," she had "goal directed thought processes with no evidence of mania or hypomania," and while her "mood was depressed," her memory, judgment, insight, impulse control, and reliability appeared adequate [*Id.* at 22]; (2) a March 20, 2018 psychiatric consult in which "[Plaintiff's] mood was anxious and depressed" but her "insight and judgment were fair" and Plaintiff "stated that her depression was under control with current medications" [*Id.*]; (3) a July 2018 therapy session that "indicated appropriate grooming and hygiene, appropriate eye contact, normal speech, logical and coherent thought process, and a reported 'depressed' mood" [*Id.* at 23]; (4) a February 2019 psychiatric follow-up in which Plaintiff described her mood as "depressed, but a little better" [*Id.* at 24]; and (5) a March 5, 2020 mental health follow-up at which Plaintiff reported her anxiety had improved, she was doing "good," and was buying a house with a garage/workshop [*Id.* at 26]. This "carefully documented" evidence is that which a "reasonable mind" could accept as adequate to support the ALJ's conclusion. *Blakley*, 581 F.3d at 406 (noting "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion," then the substantial-evidence standard is met). The Court therefore finds that the ALJ's RFC determination relating to Plaintiff's mental

health status is supported by substantial evidence.

### 2. Plaintiff's Combined History of Mental Illness and Fibromyalgia

Plaintiff's second sub-argument is that the ALJ failed to properly consider her mental and physical limitations in combination. Plaintiff notes that, as early as 2016, her treating psychiatrist, Sharon Elizabeth Barwise, M.D. ("Dr. Barwise"), thought that Plaintiff's physical pain contributed to her mental impairments and that part of the difficulty in stabilizing Plaintiff's mood was due to her chronic pain [Doc. 23 p. 16 (citing Tr. 2101)]. In addition, Plaintiff takes issue with the ALJ's consideration and evaluation of her fibromyalgia. Plaintiff submits that she has been diagnosed with fibromyalgia for a long time [Tr. 1443], which she claims is supported by the findings of her consultative examiner Robert Blaine, M.D. ("Dr. Blaine"), and the family practice nurse practitioner, Tommy Sparks ("NP Sparks"),[7] each of whom opined she was suffering from 14 of the 18 points tested for fibromyalgia pain [Doc. 23 p. 16 (citing Tr. 767, 2608)].

Plaintiff continues, arguing that the ALJ failed to properly evaluate Plaintiff's fibromyalgia under Social Security Ruling 12-2p, which requires at least 11 positive tender points on examination [*Id.*]. Plaintiff states that SSR 12-2p goes on to provide that the widespread pain associated with fibromyalgia and other symptoms such as fatigue may result in exertional limitations that prevent a person from performing a full range of unskilled work and that people with fibromyalgia may also have non-exertional physical and mental limitations due to their pain or other symptoms [*Id.* at 16–17]. Plaintiff argues that is exactly the case here because the ALJ failed to properly consider her fibromyalgia pursuant to SSR 12-2p, as he was required to consider

---

[7] In her brief, Plaintiff refers to NP Sparks as her "rheumatologist" [Doc. 23 p. 16 (citing Tr. 2608)]. The portion of the record cited to by Plaintiff, however, reveals that Tommy Sparks is an "FNP-C", otherwise known as a family practice nurse practitioner [Tr. 2608–09].

19

her fibromyalgia in combination with all her other impairments but failed to do so [*Id.*].

In response, the Commissioner again asserts that Plaintiff is simply presenting an alternative view of the evidence but that this alternative view does not mean the ALJ's determination is unsupported by the record [Doc. 27 p. 30]. The Commissioner also argues that the ALJ did comply with SSR 12-2p in assessing Plaintiff's fibromyalgia because that opinion requires the ALJ to "consider the longitudinal record . . . because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days'" [*Id.* at 31 (citing SSR 12-2p, 2012 WL 3104869, at *6)].

The Court finds the ALJ complied with the applicable regulations and SSA rulings in considering Plaintiff's physical limitations—both alone and in conjunction with Plaintiff's mental limitations—as part of his RFC determination. Turning first to Plaintiff's argument regarding her fibromyalgia, SSR 12-2p begins by stating that fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." The ruling then provides that fibromyalgia can constitute a medically determinable impairment—which is assessed at step 2 of the disability analysis—if the claimant has at least 11 of 18 positive tender points. *See* SSR 12-2p. The ruling goes on to state that, in assessing a claimant's RFC based on their fibromyalgia, an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id.*

In assessing the medical evidence regarding Plaintiff's physical symptoms, the ALJ stated,

> The most notable physical exam findings were from the claimant's March 26, 2019, consultative examination and the more recent treating notes from December 2019 through April 2020 (Exhibits 4F; 23F). The consultative exam showed reduced range of motion through the lumbar spine and extremities, a mild limping gait, difficulty with balance, positive straight leg raises at 15 degrees bilaterally, 14/18

20

fibromyalgia tender points, absent reflexes, and decreased sensation in the right foot. The exams at Exhibit 23F were significant for an intermittent resting tremor in the left upper extremity, 11-16/18 tender points, moderate lumbar tenderness, positive Tinel's signs bilaterally, positive straight leg raises, poor grip strength, and tenderness and swelling in the hands (Exhibits 23F/4-5, 11, 16-17). However, the remainder of the claimant's physical exams throughout the period at issue did not generally show such significant findings. Notably, the day prior to the consultative examination, the claimant exhibited a normal gait and stance, and no obvious tremor or involuntary movement (Exhibit 5F/101). The majority of the claimant's physical exams tended to show movement of all extremities, no edema, normal respiratory findings, a normal gait, intact reflexes, and unremarkable motor strength findings (e.g., Exhibits 2F/92, 119; 3F/61, 80-81, 103; 5F/56-57; 8F/43; 20F/14). Accordingly, while the medical evidence did document fibromyalgia tender points and periods of limited range of motion, gait dysfunction, and other findings relating to fibromyalgia, arthralgia, and a connective tissue disorder, it did not appear that these symptoms were as chronic or debilitating as alleged by the claimant. This was further supported by the normal to mild degenerative finding in the claimant's medical imaging, including of her cervical, thoracic, and lumbar spine, knees, and hands (e.g., Exhibits 10F/6; 15F/17; 19F/23; 22F/26; 29, 55; 23F/15).

Additionally, while the claimant alleged that she could not walk for more than 15 minutes, sit for more than 10 minutes, that she rarely has a functional week without pain, or that she lacks motivation to engage in her hobbies, it appeared that she reported more activity and abilities to her medical providers. By August 2018, the claimant reported that her friends were helping her get out more frequently and she was engaging in hobbies, like "making wooden ornaments" (Exhibit 3F/109-110). She reported that she was making rings and spending time with her dogs in September 2018 (Exhibit 3F/105). She was going to the veterans art center in May 2019 (Exhibit 8F/53). She stated that she was getting up and walking her dogs for 20-30 minutes each day (Exhibit 8F/39, 41). These activities suggested greater daily functional ability than the claimant alleged, including her manipulative and exertional abilities, more so when considered with the exam findings in the preceding paragraph.

[Tr. 26–27]. Later on in the opinion, the ALJ went on to find,

[C]onsidering the claimant's fibromyalgia, connective tissue disorder, and arthritis, the undersigned finds that the claimant was capable of performing light work except she could no more than occasionally climb, balance, stoop, kneel, crouch, or crawl. These limitations accommodated her periods of fibromyalgia tender points, limited range of motion, and other generalized tenderness in her back, extremities, and hands.

[*Id.* at 27–28].

The Court finds the ALJ properly accounted for Plaintiff's fibromyalgia in determining her

21

RFC. The ALJ determined that Plaintiff's fibromyalgia qualified as a severe impairment and a medically determinable impairment [Tr. 17], and considered it in determining Plaintiff's RFC [*Id.* at 27]. Then, consistent with SSR 12-2p, the ALJ applied the sequential five-step test for disability in light of Plaintiff's medically determinable impairments, including fibromyalgia, finding that the evidence demonstrated Plaintiff was not disabled. *See* 20 C.F.R. § 404.1520(a). In reaching that determination, the ALJ considered the effects of Plaintiff's fibromyalgia, citing longitudinal evidence that would support the conclusion that Plaintiff's fibromyalgia symptoms waxed and waned over time,[8] and went on to limit Plaintiff's RFC based, in part, on her fibromyalgia by finding she was capable of performing light work except she could no more than occasionally climb, balance, stoop, kneel, crouch, or crawl [Tr. 20]. The Court finds the ALJ did not err in considering the impact of Plaintiff's fibromyalgia on her RFC and his conclusion is supported by substantial evidence.

The ALJ also did not err in considering the impact of Plaintiff's fibromyalgia in conjunction with her mental impairments. The Sixth Circuit addressed a similar argument to Plaintiff's in *Emard v. Commissioner of Social Security*, 953 F.3d 844 (6th Cir. 2020). In that case, the petitioner argued the ALJ erred in determining his RFC because the ALJ considered his impairments individually, rather than in combination, and otherwise excluded his non-severe impairments from consideration. *See Emard*, 953 F.3d at 851. In response, the Sixth Circuit first

---

[8]     The longitudinal evidence includes Plaintiff reporting that she walked her dogs for 20-30 minutes each day in May 2019, the fact that the day prior to her consultative examination she exhibited a normal gait and stance, and no obvious tremor or involuntary movement, and the fact that the majority of the claimant's physical exams tended to show movement of all extremities, no edema, normal respiratory findings, a normal gait, intact reflexes, and unremarkable motor strength findings [Tr. 26–27].

noted that 20 C.F.R. § 416.945(e) provides that the ALJ will consider the "limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity" while SSR 96-8p explains that, "[i]n assessing [residual functional capacity], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* The Court went on to find that the ALJ had complied with the requirements of § 416.945(e) and SSR 96-8p in that case, despite failing to expressly discuss the combined effects of petitioner's impairments, because the ALJ "stated she had carefully considered the entire record and 'all symptoms,'" she had discussed each impairment individually, and had "specifically noted in her summary of the applicable law that she was required to comply with SSR 96-8p's mandate." *Id.* at 851–52 (citing *Gooch v. Sec'y of Social Sec.*, 833 F.2d 589 (6th Cir. 1987)).

In this case, the ALJ stated at the beginning of the section addressing Plaintiff's RFC that he "has considered all symptoms" [Tr. 20]. The ALJ then went on to assess each of Plaintiff's impairments individually, including Plaintiff's fibromyalgia and mental impairments [*Id.* at 27–28 (considering "claimant's fibromyalgia, connective tissue disorder, and arthritis" as well as her "mental conditions")]. Finally, the ALJ noted in his summary of the applicable law that he was required to comply with SSR 96-8p's mandate [*Id.* at 17]. Therefore, even if the ALJ did not expressly state that he was considering Plaintiff's symptoms in conjunction, the record indicates he complied with the requirements of 20 C.F.R. § 404.1545(e)[9] and SSR 96-8p and his decision as to Plaintiff's RFC is therefore supported by substantial evidence.

---

[9]      There is no substantive difference between 20 C.F.R. § 416.945(e) and § 404.1545(e) for purposes of the Court's analysis.

### 3. Department of Veterans' Affairs Disability Finding

Plaintiff's third sub-argument is that the ALJ erred in calculating her RFC because he failed to properly account for the fact that the VA had determined that Plaintiff was totally and permanently disabled due to her service-connected disabilities [Doc. 23, p. 18]. Plaintiff concedes that the ALJ is not required to articulate any analysis about the VA's letter pursuant to 20 C.F.R. § 404.1504 [*Id.*]. The VA's disability rating is an adjudicative finding of another agency using that agency's rules and procedures. The SSA has acknowledged that other governmental agencies, such as the VA, may make their own disability determinations, *see* 20 C.F.R. § 404.1504; however, their decisions are not subject to the same SSA rules and regulations that ALJs must adhere to in their disability determinations, and they are not binding. The regulations provide:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs . . . make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other government agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed on or after March 27, 2017, we will not provide *any* analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits.

20 C.F.R. § 404.1504 (emphasis added). While the ALJ need "not provide any analysis in [their] decision about a decision made by any other ... entity," the ALJ still must "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" received as evidence in a claim. *Id.*

Here, Plaintiff's disability status as determined by the VA—a decision of another agency—did not require discussion. The ALJ specifically addressed the decision of the VA but declined to

24

articulate how he considered it, as he correctly found it to be inherently neither valuable nor persuasive [Tr. 30 (citing 20 C.F.R. § 404.1520b(c))]. Moreover, Plaintiff points to no "supporting evidence" underlying the VA decision that was included within the Social Security record and that the ALJ failed to consider. *See McClellon v. Kijakazi*, No. 6:20-CV-3216-SAL, 2021 WL 6133847, at *6 n.2 (D.S.C. Dec. 28, 2021) (noting the record does not appear to contain all the evidence the VA considered in issuing its Rating Decision but that 20 C.F.R. § 404.1504 only requires the ALJ consider "the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [the SSA] receives in [the] claim"). Rather, Plaintiff only cites to the summary of benefits letter the VA sent her [Doc. 23 p. 15 (citing Tr. 289)], which does not include any evidence the VA relied on in reaching its disability determination [Tr. 289]. Since the ALJ was not required to provide any analysis regarding the VA's decision and Plaintiff does not cite to any additional evidence underlying the VA's decision that the ALJ did not consider, the Court finds the ALJ did not err on this issue.

### 4.    Plaintiff's Subjective Symptoms

Finally, Plaintiff contends that the ALJ failed to properly weigh her symptoms pursuant to SSR 16-3p [Doc. 23 p. 18–19]. Specifically, Plaintiff takes issue with the ALJ's finding that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record [*Id.* (citing Tr. 26)]. To support this argument, Plaintiff again points to her alleged long history of mental illness, her depressive symptoms, her PTSD, and her fibromyalgia [*Id.* at 19]. Plaintiff claims that all of those conditions, and Plaintiff's allegations regarding their severity, find ample support in the medical evidence of record, as opposed to the ALJ's findings, which Plaintiff claims lack any evidentiary support [*Id.*].

25

In response, the Commissioner argues Plaintiff failed to cite any specific allegation of error and, instead, broadly claims that the ALJ did not properly evaluate her subjective complaints [Doc. 27 p. 31]. The Commissioner asserts the ALJ gave good reasons for his finding regarding Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms and explained why they were not consistent with the evidence, including by citing to Plaintiff's unremarkable examination findings and diagnostic testing as well as her self-reported extensive activities [*Id.* at 31–32]. The Commissioner argues that Plaintiff has therefore failed to meet her burden of showing why the ALJ's evaluation of her symptoms should be disturbed [*Id.* at 32].

Section 404.1529 dictates how the ALJ is to evaluate a claimant's symptoms, including pain, as part of the RFC analysis. Section 404.1529(b) requires an ALJ to first determine whether the medical signs or laboratory findings indicate the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. Section 404.1529(c) then requires the ALJ to evaluate the intensity and persistence of the claimant's symptoms to determine how these symptoms limit the claimant's capacity for work.[10] In evaluating the intensity and persistence of a claimant's symptoms, the ALJ is to consider the

---

[10] The Sixth Circuit has described this process as follows,

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)).

26

objective medical evidence, all information that a claimant's medical sources and nonmedical sources provide about the claimant's pain or other symptoms—including a claimant's own statements regarding their pain and symptoms, and other relevant factors including:

      (i)    the claimant's daily activities;

      (ii)   the location, duration, frequency, and intensity of the pain or other symptoms;

      (iii)  precipitating and aggravating factors;

      (iv)  the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;

      (v)   treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;

      (vi)  any measures the claimant takes or has taken to relieve the pain or other symptoms; and

      (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529.[11]

      In considering a claimant's statements regarding the intensity, persistence, and limiting effects of their symptoms, the ALJ is to evaluate the statements in relation to the other evidence and determine whether there are any inconsistencies because a claimant's "symptoms, including pain, will be determined to diminish [their] capacity for basic work activities to the extent that [their] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *See* 20 C.F.R. § 404.1529(c)(4). This evaluation "is not an examination of an individual's character." SSR 16-

---

[11]    The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

3p, 2017 WL 5180304, *2 (S.S.A. Oct. 25, 2017) (effective Mar. 28, 2016). Instead, the ALJ must "review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." *Id.* The ALJ's determination is then afforded "great weight and deference," and reviewing courts "are limited to evaluating whether . . . the ALJ's explanations for [] discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)); *see also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess.")

In this case, the ALJ found that

> [Plaintiff's] medically determinable impairments could reasonably be excepted to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .

[Tr. 26]. The Court finds that, in making this determination, the ALJ properly considered the inconsistencies between Plaintiff's subjective allegations and the evidence in the record.

First, the ALJ considered that the alleged frequency and severity of Plaintiff's symptoms were not generally consistent with the medical evidence [Tr. 26]. The ALJ explained that the most notable physical examination findings were from Dr. Blaine's March 2019 consultative examination and from treatment notes from NP Sparks, dated December 2019, February 2020, and April 2020 [Tr. 765–69, 2595–96, 2602, 2607–08]. During the consultative examination, Plaintiff displayed reduced range of motion in the lumbar spine and extremities, a mild limping gait, mild-

28

to-moderate balance difficulty, absent reflexes, and decreased sensation in the right foot [Tr. 767]. Straight leg raise testing was positive at 15 degrees bilaterally, and fibromyalgia testing showed 14 out of 18 tender points [*Id.*]. NP Sparks's examinations showed an intermittent resting tremor in the left upper extremity, moderate lumbar tenderness, poor grip strength (on one occasion), and tenderness and swelling in the hands [Tr. 2595–96, 2602, 2607–08]. Fibromyalgia testing showed 11, 14, or 16 out of 18 tender points, and straight leg raise and Tinel's testing was positive [Tr. 2596, 2602, 2607–08].

Conversely, the ALJ noted that the rest of Plaintiff's physical examinations from the relevant period did not contain significant findings [Tr. 26–27]. For example, the day before Plaintiff's consultative examination, she displayed normal gait and stance and no obvious tremor or involuntary movement [Tr. 870]. Most of Plaintiff's examinations showed movement of all extremities, no edema, normal respiratory findings, a normal gait, intact reflexes, and normal motor strength [Tr. 604–05, 632, 706, 725–26, 748–49, 825, 1103, 2066]. The ALJ also noted the relatively normal medical imaging of Plaintiff's cervical spine, thoracic spine, lumbar spine, knees, and hands [Tr. 27, 1163–64, 1675, 1975, 2217, 2219–20, 2246–47]. *See* SSR 16-3p ("[O]bjective evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effect those symptoms may have on the ability to perform work-related activities."). Thus, it was appropriate for the ALJ to find that the alleged severity of Plaintiff's symptoms was inconsistent with the objective medical evidence in general, as the ALJ adequately supported his decision with citations to the medical record.

Second, the ALJ considered that Plaintiff reported more extensive activities to her medical providers than what was stated in her disability application [Tr. 27]. Plaintiff alleged in a function report submitted to the SSA that she could not walk more than 15 minutes or sit more than 10

29

minutes [Tr. 242]. Plaintiff alleged that she "rarely ever had an entire week where [she was] functional," and that she had "zero motivation" to engage in her hobbies [Tr. 237, 241]. By contrast, in August 2018, Plaintiff reported that her friends were helping her get out more frequently, and she was doing things like "making wooden ornaments" [Tr. 755]. In September 2018, Plaintiff related that she was making rings and spending time with her dogs, and in May 2019, she was "trying to function more," as she had started Project Resilience and was visiting the veterans' art center downtown [Tr. 750, 1113]. Plaintiff also reported that she was getting up and walking her dogs 20–30 minutes each day [Tr. 1101]. Overall, the ALJ found these activities suggested Plaintiff had greater daily functional capabilities than was she alleged, including in her manipulative and exertional abilities, and this is further supported by the mostly benign examination findings [Tr. 27].

As to Plaintiff's mental impairments, the ALJ acknowledged Plaintiff's reports of difficulty with tasks involving memory, following instructions, concentrating, and persisting [Tr. 28, 242]. However, the ALJ considered that Plaintiff's mental status exams were mostly benign [Tr. 28, 334, 345, 559, 625–26, 697, 738, 756–57, 904, 1114–15, 2077, 2608, 2636]. Plaintiff remained cooperative and friendly with her providers, and there were no documented deficits in her concentration or memory [*Id.*]. Plaintiff reported low motivation and anhedonia during her psychiatric and mental health visits, but she maintained some hobbies and activities like caring for her dogs and making ornaments [Tr. 696, 755, 902, 1101, 1113, 2075]. Furthermore, by March 2020, Plaintiff was reportedly doing "good" with improvement in her anxiety, as she was buying a house [Tr. 2632].

The ALJ also relied on the medical opinion evidence and prior administrative medical findings to determine Plaintiff's subjective complaints of pain and limitations.[12] Specifically, the ALJ considered the prior administrative findings of state agency medical consultants Peter Arrowsmith, M.D. ("Dr. Arrowsmith"), and Alyce Metoyer, D.O. ("Dr. Metoyer") [Tr. 29]. On April 11, 2019, Dr. Arrowsmith opined that Plaintiff could perform light work with occasional postural activities [Tr. 67–71]. Dr. Arrowsmith further opined that Plaintiff had to avoid work requiring excellent hearing and concentrated exposure to noise, vibration, pulmonary irritants, and hazards [Tr. 69]. On June 13, 2019, Dr. Metoyer affirmed the prior assessment [Tr. 87]. The ALJ found the prior administrative findings of Drs. Arrowsmith and Metoyer to be persuasive [Tr. 29]. Specifically, the ALJ found their findings "were consistent with the longitudinal medical evidence of record over the period at issue, including the numerous, generally normal physical exams from [Plaintiff's] primary clinic" [Tr. 29, 604–05, 632, 706, 725–26, 748–49, 825, 1103, 2066]. Moreover, the ALJ found the Drs. Arrowhead and Metoyer "appeared to appropriately account for [Plaintiff's] periodic limitations in range of motion and tender points, while also accounting for her normal gait and motor strength, limited focused treatment or complaints for such conditions, and generally normal to mild imaging studies" [Tr. 29].

---

[12]     For claims filed after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner must "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings based on the supportability and consistency of each opinion or finding. *See* 20 C.F.R. §§ 404.1520c(a), -(b)(2), -(c)(1)–(2). The Commissioner may also consider the source's relationship with the claimant, their specialized area of practice; and other factors that would tend to support or contradict a medical opinion, such as their familiarity with the other evidence in the claim or their understanding of the agency's disability program's policies and evidentiary requirements. *See id.* § 404.1520c(c)(3)–(5).

Additionally, the ALJ relied on the prior administrative medical findings of Rose Moten, Ph.D. ("Dr. Moten") [Tr. 29–30]. On June 14, 2019, Dr. Moten opined that Plaintiff could understand, remember, and carry out detailed instructions, set realistic goals, and make plans independently of others [Tr. 29, 87–89]. The ALJ found Dr. Moten's prior administrative findings were persuasive "due to the consistency with the mental health treating records, which noted some low motivations and depressed mood, but generally intact memory and concentration, and friendly, cooperative behavior with intact eye contact" [Tr. 29, 334, 345, 559, 625–26, 697, 738, 756–57, 904, 1114–15, 2077, 2608, 2636]. The ALJ further found that Dr. Moten appeared to appropriately account for the exam findings in the prior administrative finding as well [Tr. 30].

While the ALJ did not specifically use the term "supportability" in his discussion of these prior administrative medical findings, the Court finds the ALJ sufficiently articulated how he considered the consistency and supportability factors. It is clear from the ALJ's discussion that he found the prior administrative findings to be generally consistent with and supported by the medical evidence of record. In his analysis, the ALJ found that these prior administrative findings were generally consistent with the medical evidence of record, and the ALJ found the limitations opined therein to be supported by the medical evidence as well. Furthermore, the ALJ found that the limitations opined to in the prior administrative medical findings appeared to be appropriate, as evidenced by Plaintiff's normal examination findings and the other aspects of the medical record; therefore, the Court finds it was appropriate for the ALJ to rely on these findings.

The Court finds the ALJ's evaluation of Plaintiff's subjective complaints was appropriate in this case and that the ALJ's conclusions are supported by substantial evidence. In discrediting Plaintiff's subjective complaints, the ALJ considered the objective medical evidence, Plaintiff's reported daily activities, and the prior administrative medical findings. While the record may

32

contain evidence of more severe limitations and although Plaintiff would interpret the evidence differently, the Court finds the ALJ's determination was within his "zone of choice" in this case. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that, as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant (quotations omitted)). Moreover, the evaluation of a claimant's subjective complaints rests with the ALJ and should not be disturbed absent "compelling reasons." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112–13 (6th Cir. 2010)). The Court finds Plaintiff has not pointed to any such "compelling reasons" in this case.

The Court therefore finds Plaintiff has not presented a valid cause for remand in this case.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 22**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 24**] will be **GRANTED**.  The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge

33